NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 251260-U

NOS. 4-25-1260, 4-25-1261 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 12, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.K and J.K., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Livingston County |
|     Petitioner-Appellee, | ) | Nos. 24JA8 |
|     v. | ) |     24JA9 |
| Danielle H., | ) | |
|     Respondent-Appellant). | ) | Honorable |
| | ) | Mary E. Koll, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2    In January 2025, the State filed a petition to terminate the parental rights of respondent, Danielle H., to her minor children, M.K. (born in April 2020) and J.K. (born in April 2018). Following the fitness and best-interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. (The parental rights of the minors' father were also terminated; however, he is not a party to this appeal.) Respondent timely filed a notice of appeal, and counsel was appointed to represent her. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending there are no meritorious issues of procedure or substance to be raised on appeal that would warrant relief. We agree, grant counsel's motion to withdraw, and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2024, the State filed a petition for adjudication of wardship for the minors pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)), contending the minors' environment was injurious to their welfare. The petition alleged (1) respondent had substance abuse issues that prevented her from properly parenting, (2) the minors had access to illegal substances and other harmful materials, (3) respondent had distributed illegal substances, and (4) respondent had a history of engaging in domestic violence that prevented her from properly parenting. Following a hearing, the trial court entered a temporary custody order placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5        In March 2024, the trial court entered an adjudicatory order finding the minors neglected after finding the State had proven respondent had a history of engaging in domestic violence, preventing her from properly parenting. The court subsequently entered a dispositional order making the minors wards of the court after finding respondent "unfit" to properly care for the minors. Custody and guardianship of the minors was placed with DCFS, and respondent was ordered to cooperate with DCFS's directives.

¶ 6        In June 2025, the State filed an amended petition to terminate respondent's parental rights, alleging she was unfit for (1) failing to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) failing to make reasonable efforts during a nine-month period after adjudication of neglect to correct the conditions that caused the minors to be removed from her care (*id.* § 50/1(D)(m)(i)); (3) failing to make reasonable progress during a nine-month period after adjudication of neglect towards the return of the minors to her care (*id.* § 50/1(D)(m)(ii)); and (4) being depraved (*id.* § 50/1(D)(i)). The State

alleged the relevant nine-month periods were March 18, 2024, to December 18, 2024, and/or April 30, 2024, to January 30, 2025.

¶ 7                                    A. Fitness Hearing

¶ 8        A fitness hearing was held on June 10, 2025. Karli Cox, a caseworker for the minors, testified she was assigned to the case in September 2024. Cox noted respondent had been incarcerated during the pendency of the case. She stated respondent's incarceration had impacted her ability to complete ordered services. For example, she said the substance abuse and mental health treatment provided by either the Livingston County jail or the Illinois Department of Corrections would not be sufficient to meet the standard required by DCFS. Additionally, Cox said DCFS would need to evaluate whether respondent could "maintain sobriety outside of being incarcerated." She stated respondent had been cooperative with DCFS.

¶ 9        Madison T., the foster parent for the minors since March 2024, testified she facilitated communication between the minors and respondent but that she has decreased such facilitation following an incident wherein respondent scolded her. She discussed behavioral issues with J.K. She said the minors refer to her and her husband as "mom" and "dad" but denied instructing the minors to identify them as such. The fitness hearing adjourned and resumed on September 23, 2025.

¶ 10       The trial court admitted into evidence, without objection, three exhibits pertaining to respondent's certified convictions, one for residential burglary and two for delivery of methamphetamine.

¶ 11       Andrew King, a caseworker for the minors, testified he investigated a report that respondent had been arrested for possessing and selling methamphetamine in January 2024. King recalled respondent being confused by his involvement in the matter and said she "downplayed"

the seriousness of the matter by describing the methamphetamine recovered as "just a little bit." King recalled interviewing J.K. at the time, who said "a lot of people [would] come in and out of" the home, including "go[ing] into [respondent's] bedroom and then be there for a short amount of time and then they would leave." King stated he was concerned because J.K. "seemed to be describing potential drug deals." King said the minors were staying with their great-grandfather. He spoke with the great-grandfather, who said the minors would return to respondent's care after she was released from custody.

¶ 12　　　　Respondent testified she was incarcerated at the time of the hearing. She stated she had been incarcerated since January 2024 and expected she would be released in January 2029. She stated she communicated with the minors regularly and that they had strong relationships with extended family. She said she was enrolled in college courses and working while incarcerated.

¶ 13　　　　The trial court noted respondent had "tried harder than almost any other parent" it had observed in her position. However, the court found the State had shown by clear and convincing evidence respondent was unfit for failing to make reasonable progress towards the return of the minors to her care and depravity. The court found the State had not met its burden as to her unfitness related to maintaining reasonable interest or making reasonable efforts. The court found respondent had "demonstrated that [she] think[s] about the [minors] every day; that despite [her] current limitations, which are by [her] own doing, that they are still top of mind for [her]." The court found that objectively, respondent had not completed services that were sufficient to satisfy her service plan requirements, and due to her release date, the minors could not be returned to her in the near future. Regarding depravity, the court noted the certified convictions were all felonies that occurred within five years of the filing of the petition to terminate her parental rights. The court found there was no evidence presented to overcome the presumption of depravity. The

court found respondent unfit.

¶ 14                                B. Best-Interest Hearing

¶ 15        The matter proceeded to a best-interest hearing on November 18, 2025. Cox testified the minors had been placed with their foster parents for nearly two years. Cox visited the minors monthly and noted all of their needs were being met and they did not have any unique developmental or medical needs. She stated the minors referred to their foster parents as "mom" and "dad" and considered the foster parents' other child as their sibling. She said the minors felt loved by the foster parents and secure. On cross-examination, Cox recalled respondent provided her with a list of family members who would care for the minors in January 2025. Cox did not attempt to place the minors with family members, as recommended by respondent, because the minors "had already been with their foster parents and they were well-adjusted in the home they were in." Cox said keeping the minors with their foster parents was the least disruptive placement.

¶ 16        The guardian *ad litem* (GAL) proffered to the trial court she met with the minors in April 2025. She said the minors referred to the foster parents as "mom and dad" and the foster parents' child as their sister. The GAL said M.K. discussed the foster family in possessive terms, demonstrating she "claimed them as her family." The GAL explained the minors were "well-adjusted" and said, "[P]retty much all of the best-interest factors *** showed up to me in favor of *** their foster mom and dad."

¶ 17        The trial court found the "KIND Act" was not in effect for a majority of the case, but had it been, DCFS had made extensive efforts to find a relative placement for the minors. See Public Act 103-1061 (eff. Feb. 5, 2025), commonly known as the Kinship in Demand (KIND) Act, which amended the Juvenile Court Act. The court found all of the best-interest factors weighed in favor of terminating respondent's parental rights. The court concluded the State had met its burden

of proving it was in the best interest of the minors to terminate respondent's parental rights.

¶ 18    Respondent timely filed a notice of appeal, and the trial court appointed counsel to represent her. Appellate counsel filed a motion to withdraw pursuant to *Anders* and a supporting brief providing a statement of facts, a list of potential issues, and arguments as to why those issues lack arguable merit. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). Appellate counsel provided proof of service of her motion and a memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to respond.

¶ 19                                II. ANALYSIS

¶ 20    Appellate counsel seeks to withdraw as counsel, contending there are no meritorious claims for review. Counsel indicated he considered whether the trial court's fitness and best-interest findings were against the manifest weight of the evidence. Counsel determined the preceding arguments would be frivolous and patently without merit. After reviewing the record, we agree with counsel and conclude there are no meritorious arguments to be considered on appeal.

¶ 21                    A. Findings of Parental Unfitness

¶ 22    Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(i) of the Adoption Act, a rebuttable presumption that a parent is depraved may be found where he or she is "convicted of at least 3 felonies under the laws of this State *** and at least one of these convictions took place within 5 years of the filing of the petition or motion

seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2024). "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 23 The trial court found the State established respondent's unfitness by clear and convincing evidence on multiple grounds. The State provided a certified copy of respondent's felony convictions for residential burglary and delivery of methamphetamine. All of the convictions occurred within five years of the State's petition to terminate respondent's parental rights. At the time of the fitness hearing, respondent, due to her incarceration, was unable to satisfactorily complete court-ordered services and was unable to provide for the minors. The evidence presented on respondent's behalf was insufficient to overcome the presumption she was a depraved person pursuant to section 1(D)(i) of the Adoption Act.

¶ 24 Based on the evidence presented, we agree with appellate counsel any argument the trial court's finding of unfitness was against the manifest weight of the evidence would be meritless. The court's determination respondent was a depraved person and an unfit parent is supported by the record and not against the manifest weight of the evidence. Because we need only find one of the alleged grounds of unfitness to be supported by clear and convincing evidence, we need not address the other ground alleged in the State's petition. See *id.* at 349 ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence.").

¶ 25 B. Best-Interest Determination

¶ 26 After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352

(2004). The trial court's best-interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 27    At the best-interest hearing, the State must prove by a preponderance of the evidence termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's background and ties, including
> familial, cultural, and religious; (4) the child's sense of attachments,
> including love, security, familiarity, and continuity of affection, and
> the least-disruptive placement alternative; (5) the child's wishes;
> (6) the child's community ties; (7) the child's need for permanence,
> including the need for stability and continuity of relationships with
> parental figures and siblings; (8) the uniqueness of every family and
> child; (9) the risks related to substitute care; and (10) the preferences
> of the persons available to care for the child." *In re Jay. H.*, 395 Ill.
> App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West
> 2008)).

¶ 28    In this case, the evidence demonstrated the minors' needs were being met by their

foster parents, and they had developed a bond. The trial court noted all of the statutory factors supported termination and discussed several of them in more detail. In addition, respondent testified her expected release date was in 2029. It is unreasonable to expect any reunification in the near future between respondent and the minors.

¶ 29    The trial court did not take terminating respondent's parental rights lightly. As a reviewing court, we afford great deference to a court's best-interest findings because it sits in a superior position to observe the witnesses, judge credibility, and assess the evidence. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. Based on our review of the evidence, we agree with appellate counsel any argument it was not in the minors' best interest to terminate respondent's parental rights would be meritless. The court's best-interest findings were based on an appropriate consideration of the statutory factors. Accordingly, we conclude the court's best-interest determination was not against the manifest weight of the evidence.

¶ 30                                  III. CONCLUSION

¶ 31    For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 32    Affirmed.