NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260158-U

NOS. 4-26-0158, 26-0159 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 26, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.A. and K.F., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Fulton County |
| Petitioner-Appellee, | ) | Nos. 23JA13 |
| v. | ) | 23JA17 |
| Nicole A., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Steigmann and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appointed counsel's motion to withdraw and affirmed the orders terminating respondent's parental rights where there was no nonfrivolous basis to challenge the judgments.

¶ 2    Respondent, Nicole A., appeals orders terminating her parental rights to her children, S.A. (born in 2017) and K.F. (born in 2023). Respondent's appointed counsel has moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), upon concluding that there is no nonfrivolous issue to raise on respondent's behalf. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (explaining the procedure to move to withdraw pursuant to *Anders* in a case involving termination of parental rights). Respondent did not file a response to this motion, and the time to do so has passed. For the following reasons, we grant counsel's motion and affirm the judgments in these consolidated appeals.

¶ 3                                  I. BACKGROUND

¶ 4          In May 2023, the State filed a three-count neglect petition with respect to S.A., alleging that her environment was injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). Specifically, count I alleged that respondent's substance abuse issues had not been adequately addressed and negatively impacted her ability to care for S.A. Count II alleged that S.A.'s putative father, Levi F., failed to maintain a reasonable degree of care or concern. Count III alleged that respondent and her paramour (Cory F.) engaged in domestic violence in S.A.'s presence.

¶ 5          Shortly after the State filed the petition in S.A.'s case, respondent gave birth to K.F., whose father is Cory F. In July 2023, the State filed a three-count neglect petition with respect to K.F. that was similar to the one in S.A.'s case.

¶ 6          In October 2023, respondent admitted to the allegations regarding her substance abuse, and the trial court adjudicated both S.A. and K.F. neglected on count I of the petitions. In December 2023, the court entered dispositional orders making the children wards of the court and placing guardianship and custody with the Illinois Department of Children and Family Services (DCFS). Among the services the court ordered respondent to complete were a substance abuse assessment, any recommendations arising from that assessment, and drug screenings.

¶ 7          The trial court held four permanency review hearings between April 2024 and August 2025. At each one, the court made findings that respondent failed to make either reasonable efforts or progress. The record shows that K.F.'s father, Cory F., was incarcerated for a conviction involving delivery of methamphetamines during most of that time and was eventually paroled to respondent's residence. S.A.'s putative father, Levi F., was uninvolved with the proceedings.

¶ 8          In September 2025, the State filed petitions to terminate respondent's parental

rights to S.A. and K.F. The State alleged that respondent failed to make reasonable efforts or progress from November 20, 2024, through August 20, 2025. See 750 ILCS 50/1(D)(m)(i)-(ii) (West 2024) (providing that a parent is unfit if, during any nine-month period after the adjudication of neglect, he or she fails to make (1) "reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent" or (2) "reasonable progress toward the return of the child to the parent"). Cory F. surrendered his parental rights to K.F. Levi F. was defaulted in connection with S.A.'s case for failing to appear.

¶ 9 On December 11, 2025, the trial court held a hearing to determine respondent's parental fitness. Respondent failed to appear at the hearing, though her counsel confirmed respondent had notice of the court date. The only witness was Ashlynn Hoyle, the family's caseworker from Lutheran Social Services of Illinois. Without objection, the court allowed into evidence an exhibit that Hoyle prepared to provide a timeline of respondent's life circumstances and participation in services during the pendency of these cases. This exhibit is not included in the record on appeal. Hoyle testified that although respondent "completed quite a few of the requirements" under the service plan, the "glaring deficiency" pertained to the required drug screenings. Specifically, respondent either failed to appear for or refused to participate in 36 out of 38 screenings during the nine-month period at issue in the State's petitions. Hoyle explained that on four occasions during the relevant period, respondent was given the option of providing an oral screening rather than a urine screening. Respondent refused to complete two of those oral screenings. Of the two oral screenings she agreed to complete, one on February 19, 2025, was positive for methamphetamines. Hoyle opined that respondent "fails to understand the impact that her substance use has on her children and her ability to parent them."

¶ 10 On cross-examination by respondent's counsel, Hoyle acknowledged that

respondent was attending individual counseling. Hoyle also testified that although her timeline indicated that respondent participated in a substance abuse assessment in May 2025, Hoyle was unable to confirm that information because respondent did not execute the necessary consents. Hoyle testified that because respondent refused to go to a DCFS office to provide urine screenings, Hoyle routinely offered to meet her for oral screenings, including after the nine-month period at issue in the State's petitions. The most recent time Hoyle made that offer, in November 2025, respondent told her, " 'I don't see the need to complete this.' "

¶ 11      The trial court found respondent unfit for failing to make either reasonable efforts or progress from November 20, 2024, through August 20, 2025. Although the court acknowledged that respondent was consistent in attending visitation with her children and completed some services outside of the relevant time period, the court found that respondent was not incorporating what she learned in those classes. The court also reasoned that respondent had a drug problem, did not complete screenings, and did not understand that using drugs impacted her ability to be a parent.

¶ 12      On January 8, 2026, the trial court held a hearing to determine whether terminating respondent's parental rights would be in the best interests of S.A. and K.F. Hoyle testified for the State consistently with a report she prepared, which was admitted into evidence. Hoyle's testimony and report showed that S.A. and K.F. resided with respondent's mother, Edith, who provided a safe home and met all the children's needs. S.A. had lived with Edith since coming into care in May 2023, and K.F. joined them in December 2023, after living with one of respondent's friends for about five months. The children were "very bonded" with Edith, and she was willing to adopt them. On cross-examination by respondent's counsel, Hoyle acknowledged that respondent showed an interest in and concern for her children and wanted to serve as a parent to them. On

questioning by the court, Hoyle testified that respondent admitted to using methamphetamines during the pendency of this case. According to Hoyle, the last time respondent made such an admission to her was in November 2025, when respondent reported using methamphetamines to self-medicate for a medical condition. Hoyle testified that respondent was adamant that she should have her children, regardless of her use of substances.

¶ 13 Respondent testified on her own behalf in narrative form. She explained that she attended all events she was allowed to for her children, including school conferences and medical appointments. She also provided clothes for the children and cooked for them when allowed to go to Edith's home. Respondent testified that she spoke with S.A. almost every night on the phone and was involved in getting S.A. to participate in extracurricular activities. Respondent denied using drugs "during the whole case" but acknowledged telling Hoyle something to the effect that she self-medicated to feel normal. Respondent testified that she was honest with Hoyle when she used drugs and took accountability for it. However, respondent did not feel that her drug use made her neglectful, as her children were never harmed.

¶ 14 The trial court found that it was in the best interests of S.A. and K.F. to terminate respondent's parental rights. The court noted that it considered all relevant statutory factors. See 705 ILCS 405/1-3(4.05) (West 2024) (identifying numerous factors to consider when evaluating a child's best interests). The court emphasized that the children had been in care for more than two years, during which time Edith had "stepped into the shoes as a parent." Although there was love and probably a bond between respondent and her children, respondent had "severe substance abuse issues" and was self-medicating with methamphetamines. The court observed that respondent "clearly does not understand that being an active substance abuser impacts her ability to parent."

¶ 15 Respondent filed timely notices of appeal in both S.A.'s case and K.F.'s case. We

granted respondent's motion to consolidate the appeals.

¶ 16                                    II. ANALYSIS

¶ 17          In moving to withdraw, respondent's counsel identifies three potential issues for appeal: (1) whether the trial court's unfitness finding was against the manifest weight of the evidence, (2) whether the court's best interests finding was against the manifest weight of the evidence, and (3) whether respondent received effective assistance of counsel. Counsel explains why any challenges to the judgments lack arguable merit. We agree with counsel's assessment and have identified no other nonfrivolous issues that could be raised on appeal. Accordingly, we grant counsel's motion to withdraw and affirm the judgments terminating respondent's parental rights.

¶ 18          Involuntary termination of parental rights is a two-step process. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 27. The State must first prove by clear and convincing evidence that the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *D.D.*, 2022 IL App (4th) 220257, ¶ 27. If the parent is unfit, the matter proceeds to a second hearing, at which the State must prove by a preponderance of the evidence that it is in the best interests of the minor to terminate parental rights. *D.D.*, 2022 IL App (4th) 220257, ¶ 27. We will not disturb the finding of unfitness or the best interests determination unless the court's rulings are against the manifest weight of the evidence. *D.D.*, 2022 IL App (4th) 220257, ¶ 28. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68.

¶ 19                                 A. Unfitness Finding

¶ 20          The trial court found that respondent was an unfit parent because she failed to make

either reasonable efforts or reasonable progress from November 20, 2024, through August 20, 2025. See 750 ILCS 50/1(D)(m)(i)-(ii) (West 2024) (providing that a parent is unfit if, during any nine-month period after the adjudication of neglect, he or she fails to make (1) "reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent" or (2) "reasonable progress toward the return of the child to the parent"). Respondent's appellate counsel submits that there is no nonfrivolous basis to challenge either ground of unfitness. We may affirm the judgment if the evidence supports any ground on which the court found respondent unfit. See *J.H.*, 2020 IL App (4th) 200150, ¶ 74. Accordingly, we choose to focus on respondent's lack of reasonable progress. See *In re M.K.*, 2026 IL App (4th) 251260-U, ¶¶ 23-24 (in granting an appellate attorney's motion to withdraw, this court addressed only one of the grounds on which the trial court found the respondent unfit, as any single ground that is proved by clear and convincing evidence provides a basis to affirm a finding of unfitness).

¶ 21         This court has explained:

"Reasonable progress, which is assessed under an objective standard, exists when a parent's compliance with the service plan and the trial court's directives is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. (Emphasis in original.) [Citation.] A parent fails to make reasonable progress toward the return of the child when the parent fails to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care. [Citation.] Importantly, there is a significant difference between going through the motions, checking off the boxes, and mechanically doing what is asked of the parent and actually changing the circumstances that brought the children into care. [Citation.]

A finding of unfitness is appropriate if the court will not be able to return the child home in the near future, despite ample time and opportunity for compliance with the court's directives." (Internal quotation marks omitted.) *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 65.

¶ 22 We hold that there is no nonfrivolous basis to challenge the trial court's unfitness finding based on respondent's lack of reasonable progress. S.A. and K.F. came into care in 2023. In October 2023, respondent admitted to count I of the neglect petitions, which alleged that the children's environment was injurious to their welfare in that respondent had "substance abuse issues which have not been adequately addressed and which negatively impact her ability to care for the minor [children]." At the time of the unfitness hearing more than two years later, respondent was no closer to having her children returned to her care. During the nine-month period at issue in the State's petitions, respondent failed to appear for or refused to participate in 36 out of 38 drug screenings, which were required under her service plan. See *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 49 (in the course of affirming an order terminating parental rights based on failure to make reasonable progress, the court noted that "missing a multitude of drug testing opportunities reflects [the respondent's] lack of commitment to the process"). Respondent's statement to her caseworker about the drug screenings—" 'I don't see the need to complete this' "—speaks volumes about her lack of insight into the danger that her drug use poses to her children. On one of the rare occasions respondent agreed to submit to a drug screening, she tested positive for methamphetamines, which confirms that she was using drugs during the time period at issue in the State's petitions. Respondent plainly did not make objectively reasonable progress toward the return of the children to her care from November 20, 2024, through August 20, 2025. There is no nonfrivolous basis to challenge the unfitness finding.

¶ 23                                    B. Best Interests Finding

¶ 24            After a trial court makes a finding of parental unfitness, "the focus shifts to the child." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). To that end, terminating parental rights is warranted only if the State proves by a preponderance of the evidence that doing so would serve the child's best interests. *D.D.*, 2022 IL App (4th) 220257, ¶ 50. Section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)) sets forth a lengthy list of factors guiding a court's assessment of a child's best interests. *D.D.*, 2022 IL App (4th) 220257, ¶ 49.

¶ 25            Respondent's appellate counsel determined there was no nonfrivolous basis to challenge the trial court's finding that terminating respondent's parental rights was in the best interests of S.A. and K.F. We agree. The evidence showed that respondent's mother, Edith, raised respondent's children for more than two years when respondent was unable to do so, providing a safe home for the children and attending to their needs. Edith was bonded with the children and was committed to adopting them. Respondent obviously loves her children and expressed her desire to be their parent. However, the evidence at the best interests hearing showed that respondent lacked insight about how her ongoing use of methamphetamines would be detrimental to her children's well-being if she were placed in a caretaking role. Under the circumstances, there is no nonfrivolous basis to challenge the court's best interests finding.

¶ 26                    C. Potential Ineffective-Assistance-of-Counsel Claim

¶ 27            Finally, respondent's appellate counsel considered whether there was any basis to assert ineffective assistance of trial counsel. He determined there was no nonfrivolous basis to raise such a claim. We agree.

¶ 28            To sustain a claim of ineffective assistance of counsel, respondent would have to show that (1) "her attorney's performance fell below an objective standard of reasonableness" and

(2) "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶¶ 40-41. Here, the record does not show that respondent could advance a nonfrivolous argument as to either prong. The attorney who appeared for respondent at the unfitness hearing did all she could to represent respondent, who chose not to attend that hearing and plainly had not made reasonable progress toward the children's return to her care. The attorney who appeared for respondent at the best interests hearing likewise did his best to represent her under the circumstances, including by requesting the trial court allow her to present her testimony in narrative form. We discern no arguable deficiencies in the representation that respondent received, let alone any deficiency threatening to change the outcome of the proceedings. Accordingly, there is no arguable basis for an ineffective-assistance-of-counsel claim.

¶ 29                                      III. CONCLUSION

¶ 30            For the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgments.

¶ 31            Affirmed.