**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230501-U

Order filed February 23, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* K.W., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| A Minor | ) | Will County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal No. 3-23-0501 |
| Petitioner-Appellee, | ) | Circuit No. 19-JA-164 |
| | ) | |
| v. | ) | |
| | ) | |
| Perrisha E., | ) | The Honorable |
| | ) | Paula A. Gomora, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Circuit court's finding that mother was unfit for failing to make reasonable progress toward the return of her child was not against the manifest weight of the evidence where mother, despite occasionally visiting child, completed no services during the relevant nine-month period.

¶ 2 Respondent, Perrisha E., is the mother of K.W. The trial court entered an order finding her unfit and terminating her parental rights to K.W. She contends that the evidence failed to establish that she was unfit. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4 On October 2, 2019, when K.W. was eight days old, the State filed a petition alleging that K.W. was neglected in that his environment was injurious to his welfare because "a) the minor's siblings are wards of court and there are petitions to terminate parental rights pending; b) father is a registered sexual offender; [and] c) mother has not completed services as to her other children ***." The State requested that K.W. be made a ward of the court.

¶ 5 A shelter care hearing was held on October 3, 2019. At that hearing, respondent stipulated there was probable cause to believe K.W. was neglected due to an injurious environment. The circuit court found an immediate and emergent need for K.W. to be placed in shelter care because "minor's siblings are in care due to unexplained injuries to other minors for which [their father] pleaded guilty." The court placed K.W. in the temporary custody of the Illinois Department of Children and Family Services (DCFS) with the right to place. The circuit court advised respondent that she must cooperate with DCFS, comply with the terms of the service plans, and correct the conditions which required K.W. to be in care, or risk the termination of her parental rights.

¶ 6 On February 3, 2020, an adjudicatory hearing was held. At that hearing, the court found K.W. was neglected in that his environment was injurious to his welfare. The factual basis for the court's finding was as follows: "minor's siblings are wards of court, minor is an infant who cannot protect himself. Mother remains dispositionally unfit in 16 JA 118 and 17 JA 115. Father has not obtained custody rights as to the minor." The circuit court admonished respondent that she must

cooperate with DCFS, comply with the terms of the service plans, and correct the conditions which required K.W. to be in care, or risk the termination of her parental rights.

¶ 7        On March 10, 2020, the circuit court held a dispositional hearing. At that hearing, the State submitted the caseworker's report and service plan to the court as evidence. The State requested that K.W. be made a ward of the court because respondent had not completed services. Respondent's counsel argued that K.W. should be returned to respondent because she was visiting K.W. and "doing everything right during the visits." The trial court entered a written dispositional order finding respondent unfit for failure to complete services. Again, the court admonished respondent that she must cooperate with DCFS, comply with the terms of the service plans, and correct the conditions which required K.W. to be in care, or risk the termination of her parental rights.

¶ 8        On September 1, 2020, the court held a permanency hearing. At that hearing, counsel informed the court that respondent was regularly visiting K.W. and showing some effort. The State argued that while services had been referred, respondent had not completed any of her required services. The court found respondent had not made reasonable progress or efforts to follow the service plan and achieve the goal of K.W. returning home.

¶ 9        Respondent did not appear for the permanency review hearing on March 23, 2021. On April 19, 2021, respondent's attorney filed a motion to withdraw, asserting that respondent was no longer communicating with her. On June 14, 2021, at a hearing on the motion, respondent's counsel stated that she had not heard from respondent in over a year. Counsel filed another motion to withdraw on July 21, 2021. On August 30, 2021, the trial court granted counsel's motion to withdraw.

¶ 10　　　　　On April 19, 2022, the State filed a motion to terminate respondent's parental rights. On May 17, 2022, respondent did not appear in court for the hearing on the State's petition, so the circuit court entered an order of default against her.

¶ 11　　　　　Respondent appeared in court on September 8, 2022. At that time, the court advised respondent that an order of default had been entered against her. Respondent appeared in court again on October 7, 2022. The court again advised respondent that a default order had been entered against her and that no motion to vacate that order had been filed. The court refused to vacate the default judgment and proceeded on the hearing to terminate parental rights. Following the hearing, the court found respondent unfit. The matter proceeded to a best interest hearing where the court found it was in K.W.'s best interest for his parents' rights to be terminated and for him to remain with his current caregivers.

¶ 12　　　　　On October 13, 2022, respondent filed a motion stating she wanted to work to get K.W. back. The circuit court treated the motion as a notice of appeal. On appeal, respondent argued that the trial court erred in allowing her counsel to withdraw and failing to appoint her new counsel prior to the termination hearing. We agreed that the trial court erred in failing to appoint new counsel for respondent when she appeared in court on September 8, 2022. See *In re K.W.*, 2023 IL App (3d) 220425-U, ¶ 2. We, therefore, reversed the trial court's termination order and remanded the case to the trial court for the reappointment of counsel to represent respondent in termination proceedings. *Id*. ¶¶ 36, 38.

¶ 13　　　　　On May 4, 2023, the circuit court appointed counsel to represent respondent. On July 17, 2023, the State filed an amended motion to terminate parental rights. That motion alleged, in part, that respondent "failed to make reasonable progress towards the return of the Child to such parent within 9 months after the adjudication of neglected or abused minor Child under Section 2-3 of

4

the Juvenile Court Act, 1987, or dependent minor under Section 2-4 of that Act, pursuant to 750 ILCS 50/1D, that period beginning on May 6, 2021 to the present."

¶ 14     On August 25, 2023, the court held a hearing on the State's motion to terminate. At that hearing, the court took judicial notice of the orders it entered terminating respondent's parental rights to K.W.'s siblings.

¶ 15     Devin Dittrich, director of programs for foster care services at One Hope United, testified that K.W.'s case was opened in September 2019. Dittrich testified that K.W. came into care at birth because his two siblings were in care and K.W. tested positive for marijuana when he was born. Dittrich was familiar with K.W.'s case because she directly supervised the case from October 2019 to December 2020 and again from January 2022 through May 2022.

¶ 16     Dittrich testified that respondent completed an integrated assessment. As a result of that assessment, the services recommended for respondent included individual counseling, parenting classes, domestic violence counseling, a substance abuse assessment and a psychological assessment. From January 1, 2022 to May 2022, respondent did not attend any individual or domestic violence counseling sessions, parenting classes or substance abuse treatment. She also did not obtain a substance abuse assessment or psychological assessment during that time period.

¶ 17     Prior to January 1, 2022, respondent attended some counseling sessions but was "discharged unsuccessfully because of poor attendance." Prior to January 1, 2022, respondent attended four parenting classes. Prior to January 1, 2022, respondent did not obtain a substance abuse or psychological assessment. During the times Dittrich supervised K.W.'s case, the service plan recommendations for respondent did not change.

¶ 18     Dittrich testified that respondent has "maintained a relationship" with K.W. by visiting him, but Dittrich did not believe respondent visited K.W. consistently and thought there were

periods when respondent did not visit K.W. at all. Respondent's visits with K.W. were always supervised. Dittrich testified that for a child to be returned home, visits needed to be consistent and at least weekly, which respondent never achieved. Dittrich testified that respondent "didn't successfully complete services" and failed to show an active interest in K.W. On cross-examination, Dittrich admitted that respondent visited K.W. at least twice a month from May 2021 to January 2022.

¶ 19        India Jones, a supervisor at One Hope United, became supervisor of K.W.'s case in May 2022 and was still supervising the case at the time of the hearing. Jones testified that according to respondent's integrated assessment, respondent was supposed to engage in individual therapy and parenting classes. From May 2022 to the date of the hearing, respondent did not engage in individual therapy or complete any parenting classes. Jones also testified that respondent was supposed to complete domestic violence victim classes and obtain a psychological assessment. From May 2022 to October 7, 2022, respondent did not complete a substance abuse assessment, participate in domestic violence victim classes or obtain a psychological assessment.

¶ 20        Jones testified that respondent visited K.W. while she was supervisor, but she did not remember when or how often. Aside from visitation, Jones was unaware of any attempts by respondent to communicate with K.W. or give him gifts.

¶ 21        On September 8, 2023, the trial court entered an order finding that respondent was unfit by clear and convincing evidence because "she failed to make reasonable progress toward the return of the child to such parent *** during any 9 month period after the initial 9 months period as specified in the motion to terminate parental rights said time period being February 7, 2022 through November 7, 2022." Thereafter, the court held a best interest hearing and determined it was in K.W.'s best interest to terminate respondent's parental rights.

II. ANALYSIS

¶ 23       Respondent appeals only the trial court's finding of unfitness. She argues that the State failed to prove that she was unfit by clear and convincing evidence because the State did not introduce service plans into evidence and she visited K.W. during the relevant nine-month period.

¶ 24       The involuntary termination of parental rights is governed by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)), and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2022)). *In re D.F.*, 201 Ill. 2d 476, 494 (2002). It involves a two-step process. *Id.* First, the State must prove by clear and convincing that a respondent is an unfit parent, as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re D.F.*, 201 Ill. 2d at 494-95. Second, if the court makes such a finding, it must determine if it is in the best interests of the child that parental rights be terminated. *Id.* at 495.

¶ 25       Under section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit when there is a "[f]ailure by a parent * * * to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act." 750 ILCS 50/1(D)(m)(ii) (West 2022). Section 1(D)(m)(ii) further provides:

> "If a service plan has been established *** to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then, for purposes of this Act, 'failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication under Section 2-3 or 2-4 of the Juvenile Court Act of 1987." *Id.*

A witness who has direct knowledge about a respondent's service plans may testify about the contents of those plans, including what services the respondent did or did not complete. See *In re D.D.*, 2022 IL App (4th) 220257, ¶¶ 44-45; *In re Z.J.*, 2020 IL App (2d) 190824, ¶¶ 63-64.

¶ 26    Whether a parent has made reasonable progress "is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). "At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification." *Id.* "Reasonable progress exists when the trial court can conclude that it will be able to order the child returned to parental custody in the near future." *Id.*

¶ 27    A parent's failure to complete recommended services supports a finding that the parent failed to make reasonable progress. See *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 53. In determining if a parent is unfit based on a lack of reasonable progress, the court may only consider evidence from the relevant time period. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 39.

¶ 28    We afford great deference to a trial court's finding of unfitness because the trial court is in the best position to view and evaluate the parties and their testimony. *In re Je. A.*, 2019 IL App (1st) 190467, ¶ 46. As a result, we will not reverse a trial court's finding of unfitness unless it was against the manifest weight of the evidence. *Id.* A decision is against the manifest weight of the evidence where the opposite result is clearly evident. *Id.*

¶ 29    Here, Dittrich and Jones, the two supervisors of K.W.'s case during the relevant time period of February 7, 2022, to November 7, 2022, testified to the services respondent was to complete. Those services included parenting classes, domestic violence classes, individual counseling, a psychological assessment and a substance abuse assessment. Both Dittrich and Jones testified that defendant failed to complete any of the required services during the relevant nine-

8

month period. That testimony was sufficient to support the trial court's determination that respondent failed to make reasonable progress toward the return of K.W. from February 7, 2022, to November 7, 2022. See *In re D.D.*, 2022 IL App (4th) 220257, ¶¶ 43-46 (finding that even without considering service plans themselves, "the State provided ample evidence to establish respondent's unfitness" through case supervisor's testimony about the respondent's participation in services); see also *In re Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 25, 53 (State's presentation of testimony from caseworker that mother failed to complete services was sufficient to support trial court's finding of unfitness based on failure to make reasonable progress).

¶ 30    Respondent, however, contends that the trial court's finding was against the manifest weight of the evidence because she maintained a relationship with K.W. by visiting him. While Dittrich and Jones testified that respondent visited K.W. during the relevant time period, Dittrich described respondent's visitation with K.W. as inconsistent and insufficient to support a recommendation that K.W. return to respondent's custody.

¶ 31    "Ultimately, the trial court's ability to return the child[] to a parent's care in the near future is the lodestar of whether a parent has made reasonable progress." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 55. "[W]hen the State is able to prove, by clear and convincing evidence, that the court will not be able to return the child home in the near future, despite ample time and opportunity for compliance with the court's directives, then a finding of unfitness is appropriate." *Id.* A parent's visitation with her child is not enough to establish reasonable progress where the parent fails to complete other tasks required by the service plan and the court. See *In re A.S.*, 2014 IL App (3d) 140060, ¶¶ 18-19.

¶ 32    In this case, other than some visits with K.W., respondent did nothing during the relevant nine-month period to progress toward the goal of K.W. returning to her care. Based on the evidence

9

presented, the trial court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 33                                    III. CONCLUSION

¶ 34          The judgment of the circuit court of Will County is affirmed.

¶ 35          Affirmed.