NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250722-U

NO. 4-25-0722

IN THE APPELLATE COURT

FILED
November 4, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* R.-G.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|     Petitioner-Appellee, | ) | No. 25JA146 |
|     v. | ) | |
| Shyanne W., | ) | Honorable |
|     Respondent-Appellant). | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted counsel's motion to withdraw and affirmed the trial
court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2     In September 2024, the State filed a petition to terminate the parental rights of

respondent, Shyanne W., to her minor child, R.-G.W. (born July 2023). Following the fitness and

best interest hearings, the trial court granted the petition and terminated respondent's parental

rights. (The court also terminated the parental rights of R.-G.W.'s putative father, Jason W., who

is not a party to this appeal, as well as any unknown fathers.) Respondent appealed and counsel

was appointed to represent her. Counsel now moves to withdraw, citing *Anders v. California*, 386

U.S. 738 (1967), on the basis that he cannot raise any "meritorious or non-frivolous" arguments

on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to

termination of parental rights cases). We agree and grant counsel's motion to withdraw and affirm

the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On August 14, 2023, the State filed a petition for adjudication of wardship, alleging R.-G.W. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The petition alleged, *inter alia*, (1) respondent had a history of substance abuse and tested positive for "amphetamines, cocaine, and opiates" the day she gave birth to R.-G.W.; (2) respondent previously tested positive for cocaine and amphetamines while pregnant with R.-G.W.; (3) during her pregnancy, respondent "had very few prenatal visits," and R.-G.W. was born at 35 weeks gestation; (4) after birth, R.-G.W. exhibited withdrawal symptoms from drug exposure in the womb and was admitted to the neonatal intensive care unit (NICU); (5) respondent was homeless; and (6) respondent failed to complete a drug test the day before R.-G.W. was discharged from the hospital.

¶ 5            The trial court entered a temporary custody order that same day, finding (1) there was probable cause for the State's petition, (2) there was an immediate and urgent necessity to remove R.-G.W. from respondent's custody, and (3) reasonable efforts were made to keep R.-G.W. in respondent's custody, but those efforts did not eliminate the need for R.-G.W.'s removal. The court granted temporary custody and guardianship of R.-G.W. to the Illinois Department of Children and Family Services (DCFS). We note there was no report of proceedings from the shelter care hearing provided as part of the record on appeal. However, according to the court's written order, respondent received notice, was present at the hearing, and "[did] not object to placement of [R.-G.W.]"

¶ 6            On October 13, 2023, the trial court entered adjudicatory and dispositional orders. The adjudication order found the State proved by a preponderance of the evidence R.-G.W. was a

neglected minor based on respondent's stipulation, the contents of the petition, and the State's proffer. The dispositional order found respondent was "unfit for some reason other than financial circumstances alone, to care for, protect, train, or discipline [R.-G.W.]" Based on these findings, the court made R.-G.W. a ward of the court and continued custody and guardianship with DCFS.

¶ 7　　　　　The State then filed a petition to terminate respondent's parental rights on September 23, 2024. The petition alleged respondent was an unfit parent in that she failed to "make reasonable progress toward the return of the minor to her care within nine (9) months after the adjudication of Neglect under Section 2-3 of the [Juvenile Court Act]." See 750 ILCS 50/1(D)(m)(ii) (West 2024). The period alleged was November 16, 2023, through August 16, 2024.

¶ 8　　　　　The trial court conducted the fitness and best interest hearings on May 30, 2025.

¶ 9　　　　　　　　　　A. Fitness Hearing

¶ 10　　　　　At the outset, the State requested the trial court take judicial notice of the following documents: the shelter care petition, the dispositional order, and the permanency review orders from April 5, 2024, and August 16, 2024. Respondent did not object. The State then called LaDonna Boken-Buckley as a witness.

¶ 11　　　　　　　　　1. *Testimony of Boken-Buckley*

¶ 12　　　　　Boken-Buckley, a caseworker for FamilyCore, was assigned to respondent's case in February 2024. Respondent was required to complete substance abuse treatment, participate in individual counseling, and complete parenting classes in order to have R.-G.W. returned to her custody. Boken-Buckley never received any documentation showing respondent completed any of these services. Respondent was also ordered to submit to random drug testing. However, respondent failed to submit to any random drug tests between November 16, 2023, and August 16,

2024. Additionally, respondent admitted to using heroin on August 16, 2024.

¶ 13    Respondent initially had visitation with R.-G.W.; however, visitation was suspended on April 4, 2024, due to respondent's untreated substance abuse issues.

¶ 14    Boken-Buckley was unable to observe respondent's home or complete a home safety checklist at any point between November 16, 2023, and August 16, 2024, because respondent refused to allow Boken-Buckley inside her home. According to respondent, "the owners did not want DCFS in the home."

¶ 15    On cross-examination by respondent's counsel, Boken-Buckley clarified that respondent completed an intake at Trillium Place for substance abuse treatment, however, respondent failed to attend any subsequent treatment.

¶ 16                    2. *Trial Court's Ruling*

¶ 17    The trial court found the State had proven by clear and convincing evidence respondent failed to make reasonable progress toward the return of R.-G.W. to her care during the period alleged in the State's petition. In its oral ruling, the court highlighted respondent's failure to engage in any substance abuse treatment or comply with random drug testing. Specifically, the court stated, "[The] evidence supports the finding clearly no efforts whatsoever, let alone objective reasonable progress to be made towards a demonstrable goal of reunification."

¶ 18                    B. Best Interest Hearing

¶ 19    The trial court proceeded immediately to the best interest hearing. Prior to the presentation of evidence, the court inquired whether the parties had any updates to the best interest report. The parties indicated there were no updates.

¶ 20    According to the best interest report, R.-G.W. had resided in the same fictive kin placement since her discharge from the hospital in August 2023. Her foster parent, Tori P., was

willing and able to adopt her. Boken-Buckley visited R.-G.W. in her foster home multiple times and R.-G.W. appeared "safe and content." Tori P. met all R.-G.W.'s basic needs, including food, clothing, shelter, and medical care. The report concluded with the following recommendation from Boken-Buckley: "[I]t is this worker's recommendation and belief that it is in the best interest of [R.-G.W.] to terminate the biological parents' parental rights."

¶ 21 Following the trial court's inquiry about the best interest report, the State called Tori P. as a witness.

¶ 22 1. *Testimony of Tori P.*

¶ 23 Tori P. is R.-G.W.'s foster parent, and R.-G.W. has lived with her since R.-G.W. was discharged from the NICU in August 2024. Tori P. is also a foster parent to R.-G.W.'s younger sibling. R.-G.W. calls Tori P. "mommy and mama" and refers to Tori P.'s children as her siblings. Tori P. is willing and able to adopt R.-G.W.

¶ 24 On cross-examination by respondent's counsel, Tori P. stated she would be open to facilitating a relationship between respondent and R.-G.W. if respondent could demonstrate sobriety. Tori P. emphasized her main concern was R.-G.W. and "giving her the best life that she can have."

¶ 25 On cross-examination by the guardian *ad litem* (GAL), Tori P. agreed R.-G.W. had medical issues due to being born substance exposed. Tori P. asserted she was willing to adopt R.-G.W. despite these medical issues and stated, "[M]y love and care for her is not gonna change just because she needs more help or more support than, you know, another child her age."

¶ 26 2. *Testimony of Respondent*

¶ 27 Respondent briefly testified and made the following statement during her testimony:

"I'm really grateful for Tori for everything she's done, and I just want to have relationship with [R.-G.W.] I want to be a role model for her.

I want to see her grow up. I want her to have a good life. I just want her to know that I love her and that I want to be there for her. That I'm really sorry."

The State and GAL did not cross-examine respondent.

¶ 28                                    3. *Trial Court's Ruling*

¶ 29        Prior to providing its best interest determination, the trial court inquired about respondent's incarceration in the Tazewell County jail. According to the GAL, respondent was arrested on November 13, 2024, and charged with drug-induced homicide (720 ILCS 5/9-3.3 (West 2024)) and possession of a controlled substance (720 ILCS 570/402 (West 2024)). Respondent recently pleaded guilty to drug-induced homicide in exchange for a sentence of no more than 20 years' imprisonment. The State dismissed the charge of possession of a controlled substance in exchange for respondent's guilty plea. At the time of the best interest hearing, respondent was awaiting sentencing.

¶ 30        The trial court found it was in R.-G.W.'s best interest to terminate respondent's parental rights. The court acknowledged respondent clearly loved R.-G.W.; however, respondent's untreated substance abuse issues caused a risk of harm to R.-G.W. Additionally, R.-G.W. had been in her foster placement her entire life and felt a sense of attachment to her foster family.

¶ 31        This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33        On appeal, respondent's counsel moves to withdraw, contending he cannot raise any "meritorious or non-frivolous" arguments on appeal. In support of his motion to withdraw, counsel submitted a memorandum of law, which included a statement of facts and argument as to

why respondent's potential claims lack merit. In the memorandum of law, counsel evaluated the following claims: whether the trial court erred in finding respondent unfit and whether the court's best interest finding was against the manifest weight of the evidence. Counsel provided proof of service of his motion and memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to do so. After examining the record and counsel's motion to withdraw, we agree with counsel's conclusion there are no issues of arguable merit to be raised on appeal.

¶ 34                                    A. Unfitness Finding

¶ 35        Termination of parental rights under the Juvenile Court Act is a two-step process. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 27. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)), a parent may be found unfit if she fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2024).

¶ 36        We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the

- 7 -

record." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 37        In this case, R.-G.W. was removed from respondent's custody due to respondent's untreated substance abuse issues. Despite R.-G.W.'s removal from her care, respondent made no progress toward addressing her substance abuse issues. Respondent completed an intake with Trillium Place for substance abuse treatment but failed to follow through with the recommended treatment. Moreover, respondent continued to use heroin, as evidenced by her admission to the caseworker on August 16, 2024. Respondent also failed to submit to any random drug testing. Overall, respondent made no progress toward the return of R.-G.W. to her custody during the nine-month period alleged in the State's petition (November 16, 2023, to August 16, 2024), and, consequently, the trial court's finding respondent was an unfit parent was not against the manifest weight of the evidence. Accordingly, we agree with counsel, any argument contesting the court's unfitness finding would be without merit.

¶ 38                              B. Best Interest Finding

¶ 39        In a proceeding to terminate parental rights, the State must prove termination is in the minor's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). When considering whether termination of parental rights would be in the minor's best interest, the trial court must consider the following statutory factors:

> " '(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity

of affection, and the least[-]disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child.' " *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52 (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006)).

See 705 ILCS 405/1-3(4.05) (West 2024). Although all the statutory factors must be considered, the court is "not required to explicitly reference each factor" in its decision. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 32. This court will not reverse a best interest finding unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883 (2010). A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Anaya J.G.*, 403 Ill. App. 3d at 883.

¶ 40        In this case, R.-G.W. had lived with Tori P. since her discharge from the NICU, and Tori P. was willing and able to adopt her. Throughout her time as R.-G.W.'s foster parent, Tori P. met all R.-G.W.'s needs, including food, shelter, clothing, and medical treatment. According to Boken-Buckley, R.-G.W. was bonded to her foster family and felt safe and secure in the foster home. Additionally, R.-G.W. referred to Tori P. as her mother. Although it was clear from respondent's testimony she cared for R.-G.W. and wanted to maintain a relationship with her, our supreme court has held "at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. It was clear from the evidence presented at the best interest hearing that R.-G.W. was in a safe, loving, supportive foster home and her foster mother was willing to provide her with

permanency through adoption. Based on this evidence, we agree with counsel, any argument contesting the trial court's best interest finding would be entirely frivolous.

¶ 41                                    III. CONCLUSION

¶ 42          For the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 43          Affirmed.